# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 11, 2012

## STATE OF TENNESSEE v. FRANK HUBER SUMNER

**Appeal from the Circuit Court for Montgomery County**
**No. 41100021     Michael R. Jones, Judge**

---

**No. M2012-00051-CCA-R3-CD - Filed March 4, 2013**

---

A Montgomery County jury convicted appellant, Frank Huber Sumner, of robbery. The trial court sentenced him to nine and one-half years of confinement as a multiple offender. Appellant challenges his sentence, arguing that the length of his sentence is excessive and that he should have received an alternative sentence. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

B. Nathan Hunt, Clarksville, Tennessee, for the appellant, Frank Huber Sumner.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Montgomery County grand jury indicted appellant for one count of robbery[1] and one count of aggravated robbery. The count of aggravated robbery involved an allegation that appellant caused serious bodily injury to an eighty-four-year-old Walmart greeter when he snatched her tote bag from her arm, causing her to fall. After a trial, the jury convicted appellant of the lesser-included offense of robbery.

---

[1] The record reflects that count one of the indictment, which charged appellant with robbery, was severed and set for trial at a later date.

Ardella Neumann, the victim in this case, testified that she left her job as a Walmart greeter around 9:00 p.m. on November 4, 2010, and walked outside to her vehicle. She was carrying a tote bag that contained her lunch, billfold, and cellular telephone. She also had placed inside of her tote bag a "Fanny Pack" containing items she needed to keep with her while working. She opened the driver's side door of her vehicle and was about to place her belongings on the passenger side seat when someone came from behind her and grabbed her tote bag. The altercation caused the victim to spin and fall onto the pavement. The assailant then ran away with the victim's belongings. The victim yelled for help, but no one was nearby. She "knew [that her] shoulder was crushed" and that she had to get up off of the pavement, so she used her vehicle's door to pull herself up. Two women walking in the parking lot saw the victim and assisted her. Someone called an ambulance, and the victim was transported to Gateway Medical Center. The victim eventually received all of her stolen property back except $80 that was in her billfold.

Dr. Duncan McKellar, a physician at Gateway Medical Center, testified that he treated the victim for a comminuted proximal humerus fracture of her left shoulder, which she sustained from her fall during the robbery. Dr. McKeller recommended that the victim undergo surgery, which another surgeon in his office performed. The victim was hospitalized for approximately five days. He stated that the pain associated with the type of injury the victim suffered could affect her mobility. On cross-examination, Dr. McKellar agreed that this type of fracture was common in older people.

Officer Chris Eley with the Clarksville Police Department testified that he responded to the scene of the robbery. When Officer Eley arrived at Walmart, he met with the victim, and the victim recounted the incident to him. Walmart employees allowed Officer Eley to view the surveillance video from the parking lot. Officer Eley saw a vehicle that was "circling the parking lot multiple times; [it] didn't appear to have any legitimate purpose[.]" The vehicle stopped behind the victim's vehicle. The suspect got out of the vehicle, pulled the victim to the ground, returned to the vehicle, and drove away. From the video, Officer Eley determined that the suspect's vehicle appeared to be a dark colored Nissan Altima with oxidation on the hood. It was also missing the left front hubcap. Officer Eley alerted other officers to be on the lookout for the suspect's vehicle.

Officer Darren Koksi with the Clarksville Police Department testified that he participated in the traffic stop of the suspect's vehicle. The occupants of the vehicle took Officer Koksi to the address where appellant was located. Officer Koksi stated that the house at that address was a "crack" house, but he was not certain whether appellant was high when he apprehended him. He transported appellant from that address to the criminal investigation division. Appellant later took Officer Koksi to the dumpster where appellant had discarded the victim's belongings. Appellant got into the dumpster and retrieved the

victim's belongings. Officer Koksi said appellant was cooperative and appeared to be remorseful.

Detective Raymond Colon with the Clarksville Police Department testified that he was present when authorities interviewed appellant. He recalled that appellant said that he was on drugs and began stealing to pay his girlfriend's rent and support his drug habit. Appellant admitted to snatching the victim's bag in the Walmart parking lot and fleeing the scene.

Appellant testified that he had been smoking crack cocaine and methamphetamine on November 4, 2010. On the night of the 4th, appellant went to Walmart to purchase cigarettes. While at Walmart, appellant parked his vehicle behind the store and smoked crack. Appellant stated that he did not plan on robbing anyone that night, but said, "[A]fter I . . . hit the crack, I got the rush, and . . . the next thing you know, . . . I was snatching a purse and back at the crack house." Appellant did not know the victim's age before he robbed her. He denied physically touching the victim and said he did not intend to hurt her.

Appellant stated that the police apprehended him while he was at the crack house and that he had gotten high immediately before they came. He confessed to the crime after the police told him what he had done. Appellant said that he was very remorseful and that he helped the police recover the items he had stolen except the $80, which he had used to purchase crack. Appellant wanted to apologize to the victim, but his attorney advised him not to do so because it could be considered coercing a witness.

After hearing the evidence, the jury convicted appellant of the lesser-included offense of robbery. The trial court held a sentencing hearing on December 8, 2011, at which the appellant presented the following evidence:

Teresa R. Sumner, appellant's mother, testified that appellant could live with her and her husband if the court granted him probation. She stated that she believed appellant was under the influence of alcohol and drugs when he committed this crime and that he needed treatment for his drug addiction. Mrs. Sumner said that Synergy treatment facility had accepted appellant as a patient. According to Mrs. Sumner, appellant always had a job and was a religious man. On cross-examination, Mrs. Sumner stated that she was aware of appellant's prior criminal record. She admitted that appellant had been in bar fights and "discrepancies with his wom[e]n friends, who had . . . struck first." However, Mrs. Sumner denied that appellant was a violent person.

Chaplain Sexton, the Chaplain at the Montgomery County Sheriff's Department, stated that appellant had been holding Bible studies at the jail for an extended period. He said that appellant was a positive influence on other inmates. When asked whether the Bible

studies helped appellant become a better person, Chaplain Sexton answered, "I couldn't say 'better,' I don't really know him except for in our jail facility, but I do know that he is participating in the Bible studies."

Appellant exercised his right of allocution. He apologized to the victim and the court. He said that the person who robbed the victim "wasn't the real Frank Sumner." He swore that he would spend the rest of his life making up for what he did to the victim if she would allow him to do so. He offered to do manual labor for the victim to compensate her for what he had done. Appellant told the victim that she could contact his parents and that they would reimburse her $85 for the money he had taken from her billfold. He said that he had been saving the money that people had sent to him for his birthday and Christmas while he was incarcerated.

Appellant further stated that he had secured employment with Merrell Home Improvement and would work there if the court granted him a sentence of probation or community corrections. Appellant read letters from three of his neighbors in which the neighbors stated that appellant was respectful, hardworking, came from a Christian family, showed care and concern for others, and was not a violent person. Appellant asked the court's permission to look the victim in her eyes and apologize. The court allowed it, and appellant told the victim that he was very sorry and hoped that she would forgive him.

After hearing the evidence, the trial court found as enhancement factors that appellant had a previous history of criminal convictions and criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(1) (2010). Noting appellant's long criminal history, the trial court stated that it was not going to consider other enhancement factors. The trial court gave some consideration and mitigating weight to the facts that appellant assisted authorities in locating and recovering the victim's property, had taken Bible courses, was a positive influence on other inmates, had maintained employment, and had a stable home environment. *See id* § 40-35-113 (10), (13). After weighing the enhancement and mitigating factors, the court sentenced appellant to serve nine years and six months in the Tennessee Department of Correction. The trial court concluded that a sentence involving confinement was necessary to protect society from appellant, who has a long history of criminal conduct. *See id.* § 40-35-103(1)(A). The court also concluded that appellant was not a favorable candidate for alternative sentencing based on his prior criminal record. *See id* § 40-35-103(6)(A).

II. Analysis

Appellant challenges his sentence on appeal, arguing that the length of his sentence is excessive and that the trial court should have granted him an alternative sentence. The

State responds that the trial court properly sentenced appellant and did not abuse its discretion when doing so. We agree with the State.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b) (2010). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id*. § 40-35-103(4) (2010).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Id.* at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008) The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

A. Length of Sentence

Appellant argues that the sentence imposed by the trial court was excessive. In doing so, he challenges the weight given to the enhancement and mitigating factors found by the trial court. It is well established that the trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

Appellant also alleges that the trial court did not properly consider his remorse as a mitigating factor under Tennessee Code Annotated section 40-35-113(13). He claims that the court should have considered his statement at the sentencing hearing in which he expressed remorse for what he had done. The transcript of the sentencing hearing reflects that the trial court considered appellant's remorse as a mitigating factor but did not give it much weight. The court stated, "Today [appellant] is very remorseful. That night, he was not remorseful. He was grabbing her purse, pulling her to the ground. I don't consider that. I don't give it much, if any weight." Again, appellant may not challenge the trial court's weighing of mitigating factors on appeal. *Id.* Furthermore, even if the trial court did not consider appellant's remorse as a mitigating factor at all, appellant's sentence still fell within the appropriate range, and the record shows that the trial court sentenced appellant according to the statutory purposes and principles. *See Bise*, 380 S.W.3d at 706 ("[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005."). This issue is without merit.

## B. Alternative Sentencing

Appellant argues that the trial court abused its discretion when it did not grant him an alternative sentence of community corrections or probation. In the alternative, he argues that the trial court erred when it did not give him an opportunity to complete rehabilitation before sentencing.

A court no longer presumes that a defendant is a favorable candidate for alternative sentencing under the revised Tennessee sentencing statutes. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40–35–102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2010). A trial court may deny alternative sentencing and sentence a defendant to confinement based on any of the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

*Id*. § 40-35-103(1) (2010). Furthermore, the trial court should examine the defendant's potential for rehabilitation or lack thereof when determining whether an alternative sentence is appropriate. *Id*. § 40-35-103(5).

Every sentencing decision by a trial court entails a case-by-case analysis. *State v. Majid Farraj*, No. W2009-02566-CCA-R3-CD, 2011 WL 4716228, at *4 (Tenn. Crim. App. Oct. 6, 2011) (citing *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995)). While a trial court must consider several circumstances in determining an appropriate sentence, it is relevant for the court to evaluate whether granting probation would unduly depreciate the seriousness of the offense. *See State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997); *Majid Farraj*, 2011 WL 4716228, at *4 (citing *Bingham*, 910 S.W.2d at 456).

Although appellant was eligible for an alternative sentence because his sentence is less than ten years, *see* Tenn. Code Ann. § 40-35-303(a) (2010), the trial court properly denied alternative sentencing in appellant's case. The trial court properly determined that appellant had an extensive criminal history. The presentence report in the record clearly supports this conclusion. Courts had previously granted appellant alternative sentences, yet he continued committing criminal offenses after service of those sentences. The trial court noted that appellant had been given opportunities to reform, yet he continued on the same path. The trial court ordered a sentence of confinement in this case to protect society from appellant, who had a very long history of criminal conduct. Appellant has failed to show that the trial court abused its discretion in sentencing him to confinement, and he is not entitled to relief on this issue. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (holding that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence).

Appellant further claims the trial court should have given him the opportunity to complete a rehabilitation program before sentencing. In support of his claim, appellant cites Tennessee Code Annotated section 40-35-103(5), which requires the trial court to consider a defendant's potential or lack of potential for rehabilitation or treatment when determining the sentence alternative or length of a term to be imposed. While the trial court must consider a defendant's potential or lack of potential for rehabilitation, nothing in the statute requires trial courts to grant defendants the opportunity to complete such rehabilitation or treatment programs before sentencing. Appellant has not cited any authority that states that a trial court must delay sentencing to allow a defendant to complete such a program. Thus, we conclude this issue is without merit.

**CONCLUSION**

The record shows that the trial court sentenced appellant according to the statutory purposes and principles of sentencing. Appellant has failed to prove that the trial court abused its discretion in sentencing him. Accordingly, we conclude that appellant is not entitled to relief.

After careful review of the parties' briefs, the record, and applicable law, we find no error and affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE